UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

JOHN ANDREW FLORES,

         Plaintiff,

    v.

CAPTAIN NIEVA (Shield No. 501), OFFICER
SMITH (Shield No. 3893), OFFICER
MILLNER (Shield No. 7468), and OFFICER
PADUA (Shield No. 9213),

         Defendants.

------------------------------------------------------X

CAPTAIN NIEVA (Shield No. 501), OFFICER
SMITH (Shield No. 3893), OFFICER
MILLNER (Shield No. 7468), and OFFICER
PADUA (Shield No. 9213),

         Third-Party
         Plaintiffs,

    v.

THE CITY OF NEW YORK,

         Third-Party
         Defendant.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 6, 2017

14 Civ. 7960 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

    Plaintiff John Andrew Flores alleges that he was assaulted by corrections

officers while incarcerated at Rikers Island. His operative complaint, brought

pursuant to 42 U.S.C. § 1983, names only individual defendants. Now — after

the close of fact discovery — Plaintiff moves for leave to amend his complaint in

order to include a claim of municipal liability against the City of New York (the

"City").  The City opposes.  Because Plaintiff has demonstrated good cause to amend under Federal Rule of Civil Procedure 16, and the Court finds no basis to deny leave to amend under Federal Rule of Civil Procedure 15, Plaintiff's motion is granted.

**BACKGROUND**[1]

**A.      Allegations in the Complaint**

On October 1, 2014, Plaintiff brought a *pro se* § 1983 action, alleging that he was assaulted by corrections officers while in the custody of the New York City Department of Corrections ("DOC") at the Robert N. Davoren Complex's Adolescent Mental Observation Unit on Rikers Island.  (Compl. 1-4).

The Complaint alleges the following facts.  Plaintiff was repeatedly punched and kicked in the face by Corrections Officer ("C.O.") Smith, while Captain Nieva stood by, and then Plaintiff was "dragged" into a corridor where there were no video cameras.  (Compl. 3).  There, Captain Nieva and three unidentified corrections officers continued to assault Plaintiff, while another officer watched.  (*Id.*).  The assault left Plaintiff with an injured jaw, swollen face, and two black eyes.  (*Id.*).  Thereafter, he was denied medical attention for two days.  (*Id.*).  Because Captain Nieva was present when Plaintiff was treated, the Complaint alleges, the doctor refused to record what had actually happened

---

[1]      For convenience, the Complaint is referred to as "Compl." (Dkt. #1); the Amended Complaint as "FAC" (Dkt. 18); the Proposed Second Amended Complaint as "PSAC" (Dkt. #92-1); Plaintiff's moving brief as "Pl. Br." (Dkt. #91); the declaration in support of Plaintiff's motion as "Burns Decl." (Dkt. #92); the City's opposition brief as "City Opp." (Dkt. #97); the affirmation in opposition to Plaintiff's motion as "Noble Aff." (Dkt. #98); and Plaintiff's reply brief as "Pl. Reply" (Dkt. #99).

to Plaintiff.  (*Id.*).  The Complaint identifies the date and time of the assault only as: "October or November at around 12:30 A.M."  (*Id.* at 2).  The Complaint names as defendants Captain Nieva, C.O. Smith, and several John and Jane Does, but not the City or DOCS.  (*Id.* at 1).

**B.    Procedural History**

On October 24, 2014, this Court issued an Order of Service, which requested that Defendants Smith and Nieva waive service of summons, and that Plaintiff file an amended complaint specifying the date of the alleged assault and providing other details.  (Dkt. #8).  The Court also directed the Clerk of Court "to notify the New York City Department of Correction and the New York City Law Department" of that Order.  (*Id.*).   On November 14, 2014, Corporation Counsel appeared in this action as an "Interested Party" and requested "that all notices and other papers be served upon" it.  (Dkt. #9).

On February 6, 2015, Plaintiff filed an Amended Complaint (the "FAC") that was still missing certain identifying details as well as the exact incident date, estimating only that it was in October or November of 2011.  (FAC 4).  On March 20, 2015, Corporation Counsel informed the Court that it had identified the date of the incident described in Plaintiff's complaints and the corrections officers present during the alleged assault — Captain Nieva and C.O. Smith as well as C.O.'s Padua and Millner.  (Dkt. #19).  On May 20, 2015, the Court directed the Clerk of Court to amend the case caption to include the aforementioned officers and remove all John and Jane Doe defendants.  (Dkt.

#30).  All four of the individual defendants have either been served or have waived service.  (Dkt. #35, 38, 41, 83).

On August 6, 2015, C.O. Millner and C.O. Padua filed a Third-Party Complaint against the City, which was amended the following day.  (Dkt. #44, 47).  The Amended Third-Party Complaint alleges that the conduct complained of by Plaintiff occurred within the scope of the correction officers' employment and seeks indemnification by the City for any liability arising from Plaintiff's suit.  (Dkt. #47).

On December 3, 2015, the Court ordered the Clerk of Court to "seek pro bono counsel to enter a limited appearance for the purpose of conducting certain document discovery and depositions ('Limited Discovery Counsel')." (Dkt. #64 at 1).   This Order set forth the scope of representation, which "consist[ed] of defending the deposition of the plaintiff and taking the depositions of [the individual defendants], as well as conducting document and other discovery necessary to take or defend such depositions."  (*Id.* at 2).  The Order also provided that counsel "may, but is not required to, conduct additional discovery which, in [the] exercise of his or her good faith judgment, Limited Discovery Counsel deems necessary."  (*Id.*).

On January 6 and 7, 2016, two attorneys from the Kramer Levin firm appeared in this case as Limited Discovery Counsel.  (Dkt. #68, 71).  On January 7, 2016, the Court entered a Case Management Plan and Scheduling Order, which set the deadline for fact discovery on May 6, 2016, and for expert discovery on June 20, 2016.  (Dkt. #70 at 2).  The Order did not set a deadline

4

for the filing of amended pleadings, but noted that the Order "may not be modified or the dates … extended, except by further Order of th[e] Court for good cause shown."  (*Id.* at 3).

## C.  The United States Attorney's Office Investigation of Rikers Island

According to Limited Discovery Counsel, Plaintiff "was not in a position to understand the legal requirements for municipal liability under 42 U.S.C. § 1983 prior to" the appointment of counsel.  (Burns Decl. ¶ 8).  After a June 2016 meeting with Plaintiff, Limited Discovery Counsel "began to investigate whether [Plaintiff] had a good-faith basis to assert a … claim against the City" pursuant to *Monell* v. *Department of Social Services of City of New York*, 436 U.S. 658 (1978).  (*Id.* at ¶ 4).

"Shortly after" the June 2016 meeting, while researching the City's potential *Monell* liability, "counsel learned of a report produced by the United States Attorney's Office for the Southern District of New York ('USAO') presenting the findings of an investigation into the treatment of adolescent male inmates between the ages of 16 and 18 at jails on Rikers Island during the period of 2011 to 2013."  (Burns Decl. ¶ 5).  That report (the "USAO Report" or the "Report") is attached as Exhibit B to the Burns Declaration.  The Report was published on August 4, 2014, and addressed to the Mayor's Office, DOC, and Corporation Counsel.  (Burns Decl., Ex. B, at 1).

The USAO Report "centered exclusively on whether DOC adequately protects adolescents from harm" — including "whether adolescents are subject to excessive and unnecessary use of force by DOC correction officers and their

supervisors" — and "primarily focused on practices and conduct during the period 2011 through the end of 2013." (Burns Decl., Ex. B, at 1-2). The Report concluded

> that there is a pattern and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates. In particular … adolescent inmates at Rikers are not adequately protected from harm, including serious physical harm from the rampant use of unnecessary and excessive force by DOC staff.

(*Id.* at 3). The USAO Report also identified "systematic deficiencies that contribute to, exacerbate, and indeed are largely responsible for the excessive and unnecessary use of force by DOC staff." (*Id.* at 4).

According to Limited Discovery Counsel, Plaintiff "was unfamiliar with the findings of the USAO Report, or any other evidence of the DOC's unconstitutional customs and policies at RNDC" prior to working with Limited Discovery Counsel. (Burns Decl. ¶ 9). Upon learning of the USAO Report, Limited Discovery Counsel "conducted research into whether [Plaintiff] had a basis to assert a *Monell* claim against the City." (*Id.* at ¶ 6). Concluding that he did, counsel agreed to expand the scope of its representation to include the instant motion for leave to amend the FAC. (*Id.*).

**D.     The Instant Motion**

Plaintiff first raised with the Court the prospect of amending the FAC to include a *Monell* claim during a July 22, 2016 telephonic conference; the Court granted the parties' leave to brief the issue. (Dkt. #85). On August 12, 2016, Plaintiff filed the instant motion and supporting materials (Dkt. #90-92), including a Proposed Second Amended Complaint (the "PSAC," Dkt. #92-1); the

City filed its opposition brief and supporting materials on September 30, 2016[2]

(Dkt. #97-98); and Plaintiff filed his reply brief on October 14, 2016 (Dkt. #99).

## DISCUSSION

**A.    Plaintiff is Granted Leave to Amend the FAC**

    **1.    Plaintiff Has Demonstrated Good Cause Under Rule 16(b)**

        **a.    Applicable Law**

Under Rule 15(a)(2), "[a] court should freely give leave [to amend] when

justice so requires."  However, where, as here, a scheduling order is in place,

"the lenient standard under Rule 15(a) ... must be balanced against the

requirement under Rule 16(b) that the Court's scheduling order 'shall not be

modified except upon a showing of good cause.'"  *Holmes* v. *Grubman*, 568 F.3d

329, 334-35 (2d Cir. 2009) (citation omitted).  Rule 16(b) "provides the district

courts discretion to ensure that limits on time to amend pleadings do not result

in prejudice or hardship to either side."  *Kassner* v. *2nd Ave. Delicatessen, Inc.*,

496 F.3d 229, 243-44 (2d Cir. 2007).

In determining whether there is good cause, the Second Circuit has

instructed that

> the primary consideration is whether the moving party
> can demonstrate diligence.  It is not, however, the only
> consideration.  The district court, in the exercise of its
> discretion under Rule 16(b), also may consider other
> relevant factors including, in particular, whether

---

[2]    The Court's July 22, 2016 Order setting the briefing schedule for this motion directed the City to "address the threshold question of whether the Court can fairly consider the [City's] arguments when ruling on Plaintiff's motion."  (Dkt. #85).  The City has argued that the Court may do so (*see* City Opp. 5-7), and Plaintiff nowhere disputes the point (*see generally* Pl. Br. & Pl. Reply).  Accordingly, Plaintiff's arguments on this front are deemed waived.

> allowing the amendment of the pleading at this stage of
> the litigation will prejudice defendants.

*Kassner*, 496 F.3d at 244.  A district court's decision to grant or deny leave to amend is "an exercise of its broad discretion concerning the pleadings."  *Id.* at 245.

### b.    Analysis

Good cause exists to permit Plaintiff to amend the FAC.  While his record is imperfect, Plaintiff — incarcerated throughout this litigation — has been diligent overall in pursuing this action.  Even during the litigation's early stages, when he had been proceeding *pro se*, Plaintiff generally complied with the Court's deadlines and sought extensions or provided updates when additional time was needed.  (Dkt. #13-15, 17-18, 21, 24, 59).  He requested a copy of this District's Pro Se Manual (Dkt. #23) and conscientiously followed up on multiple occasions with the Clerk's Office and the Court to ensure that he had correctly effectuated service on Defendants (Dkt. #26-27, 31, 59-60).  He has also kept the Court apprised of his multiple prison relocations.  (Dkt. #22, 76).  Limited Discovery Counsel, who joined this action in early January 2016, have also dutifully fulfilled their obligations.  Counsel's research and ultimate proposal to pursue municipal liability arrives later than preferred, but the Court is offered no persuasive reason to believe that this delay was undue or a product of indolence or neglect.

Allowing Plaintiff to amend his complaint would no doubt inconvenience the City.  But it would not be prejudicial, never mind unduly so.  Corporation Counsel, which represents the City, was notified of this lawsuit and its

allegations of abuse on October 24, 2014, about three weeks after the suit was originally filed. (Dkt. #8). Corporation Counsel appeared in this matter as an Interested Party about two weeks after that, on November 14, 2014. (Dkt. #9). It has also participated in this suit from early on, including in substantial ways — such as "conduct[ing] nearly the entire [deposition] examination [of Plaintiff] while counsel for the individual defendants asked only a handful of questions combined" — according to Plaintiff's representations, which the City nowhere denies. (Pl. Br. 20). Corporation Counsel became even further involved when the City was named a Third-Party Defendant. (Dkt. #44). *See Mask* v. *Johnson*, No. 96 Civ. 6167 (DC), 1997 WL 662337, at *2 (S.D.N.Y. Oct. 22, 1997) ("Plaintiff's *Monell* claim against the City is based on the same facts underlying the claim for indemnification asserted by [an individual defendant/third-party plaintiff] against the City. Therefore, the City would not be prejudiced by the plaintiff's assertion of a *Monell* claim directly against it.").

In sum, Corporation Counsel has been on notice of the alleged facts and circumstances surrounding Plaintiff's alleged assault, as well as of the DOC investigation into the incident. (*See* Tr. of Dec. 3, 2015 Conf., Dkt. #66, at 5:2-13). The same nucleus of operative facts persists, as do the constitutional-right violations alleged. The proposed amendment seeks to extend liability for the alleged assault to the City. In this respect, the PSAC includes a *Monell* claim and factual allegations in support thereof. (*See* PSAC ¶¶ 34-42, 70-74). Plaintiff indicates that discovery related to this new claim will be tailored (Pl. Br. 21; Pl. Reply 5), and the Court will ensure that it is. Good cause has been

demonstrated.   *See PNC Bank, Nat. Ass'n* v. *Wolters Kluwer Fin. Servs., Inc.*, 73

F. Supp. 3d 358, 376 (S.D.N.Y. 2014).

### 2.   There Is No Basis to Deny Leave to Amend Under Rule 15(a)

#### a.   Applicable Law

Good cause having been found, the Court must next address the factors

set forth in Rule 15(a).  The Supreme Court's seminal decision in *Foman* v.

*Davis* continues to govern this analysis:

> If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought to
> be afforded an opportunity to test his claim on the
> merits.   In the absence of any apparent or declared
> reason — such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment,
> etc. — the leave sought should, as the rules require, be
> "freely given."

371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

#### b.   Analysis

The Court does not find that the proposed amendment is unduly delayed

or unduly prejudicial for the reasons described earlier.[3]  The Court also does

not find that Plaintiff harbors a dilatory motive in seeking to amend the FAC.

The City emphasizes that Plaintiff first raised the prospect of a *Monell* claim

---

[3]   Moreover, a *Monell* claim appeared nowhere in Plaintiff's prior two *pro se* complaints
because he "was unfamiliar with the findings of the USAO Report, or any other evidence
of the DOC's unconstitutional customs and policies at RNDC" prior to working with
Limited Discovery Counsel.  (Burns Decl. ¶ 9).  Thus, the City's passing argument that
"Plaintiff repeatedly failed to assert the new claims in prior pleadings" (City Opp. 11-12)
is unpersuasive, and better couched as a futility argument, even if an unsuccessful one.

just four days after the parties' submission of a status letter to the Court and only one day before a settlement meeting between Plaintiff and the Defendants. (City Opp. 10-11). "[T]he timing of plaintiff's first communication that [he] intended to pursue [a *Monell* claim] ... indicates that the purpose of the proposed amendment [is] calculated toward settlement rather than to timely pursue the claim in a non-prejudicial fashion." (*Id.*). Even assuming this were sufficient to qualify as a dilatory motive, the Court cannot infer such motive based on this timing alone, particularly in light of Plaintiff's equally plausible explanation that the timing was a result of researching the issue and arriving at a good-faith basis to assert a *Monell* claim. (Pl. Reply 4).

Finally, the City raises two principal futility arguments: (i) the proposed *Monell* claim fails to state a claim and (ii) it is also time-barred. (City Opp. 14-19). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente* v. *Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

The City's first argument can be dispensed with quickly. Municipalities are liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Monell*, 436 U.S. at 694. As relevant here, this "policy or custom" requirement may be satisfied by alleging the existence of "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have

been aware," or of a "failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *White* v. *City of N.Y.*, No. 13 Civ. 7421 (KPF), 2015 WL 4601121, at *5 (S.D.N.Y. July 31, 2015) (quoting *Brandon* v. *City of N.Y.*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Here, Plaintiff's PSAC allegations and the incorporation of the USAO Report (*see* PSAC ¶¶ 34-42) — the latter of which details the pervasive use of excessive force against adolescents at Rikers Island from 2011 through 2013, and attendant supervision failures — "nudge[s]" Plaintiff's *Monell* claim "across the line from conceivable to plausible." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). The "operative inquiry at this stage is not whether the [USAO Report] and its conclusions will ultimately support a finding of *Monell* liability, but rather whether Plaintiff has sufficiently alleged a policy or practice that is widespread and of which policymakers must have been aware." *Kucharczyk* v. *Westchester Cnty*, 95 F. Supp. 3d 529, 545 (S.D.N.Y. 2015).

The timeliness question is a closer one. The statute of limitations for § 1983 actions arising in New York is three years. *See Eagleston* v. *Guido*, 41 F.3d 865, 871 (2d Cir. 1994). The City argues that Plaintiff's claim accrued at the time of the alleged assault on October 24, 2011, rendering the proposed *Monell* claim time-barred. (City Opp. 15-16). Plaintiff maintains that his claim accrued when he "knew about, or at least had reasons to know about, the policy or custom upon which he bases the claim," i.e., with the August 4, 2014

publication of the USAO Report.  (Pl. Br. 11 (internal quotation marks and citation omitted)).

Plaintiff supports his position with the Second Circuit's decision in *Pinaud* v. *County of Suffolk*, which observed:

> Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom."

52 F.3d 1139, 1157 (2d Cir. 1995) (internal citation omitted).  Relying on an unpublished decision from the Second Circuit, *Lawson* v. *Rochester City School District*, the City argues that the above-quoted language from *Pinaud* is dictum and, therefore, should be ignored in favor of "the longstanding rule that 'a § 1983 cause of action accrues when the plaintiff becomes aware that [he] is suffering from a wrong for which damages may be recovered in a civil action.'" (City Opp. 16 (quoting *Lawson* v. *Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (summary order))).  For the City, this means the claim accrued at the time of the alleged assault.

The Court declines the City's *Lawson*-based invitation to deviate from *Pinaud*.  *First*, the Second Circuit's summary order in *Lawson* does not abrogate the Circuit's precedential decision in *Pinaud*.  True, *Lawson* calls the *Pinaud* majority's discussion of *Monell* accrual dictum based on Judge Jacobs's partial concurrence and partial dissent in *Pinaud* labeling it as such.  *See Lawson*, 446 F. App'x at 329 (highlighting that, "as Judge Jacobs noted in a

separate opinion," the accrual discussion is dictum) (citing *Pinaud*, 52 F.3d at

1162 (Jacobs, J., concurring in part and dissenting in part)).  But if summary

orders are to be given such weight, then the Court would do well to be equally

mindful of the Circuit's summary order in *Birch* v. *City of New York* — issued

not two months ago — in which the Circuit favorably block-quoted the same

*Pinaud*-majority accrual language, and then applied it to the facts presented:

"In light of *Pinaud*, the limitations period for [the plaintiff's] *Monell* claims did

not begin until such time as he should have known that [the complained of

conduct] resulted from the City's 'policy or custom.'"  No. 16-1746, 2017 WL

129148, at *2 (2d Cir. Jan. 12, 2017).  The *Birch* panel, it should be noted, was

presided over by Judge Jacobs.  (*See id.*, Dkt. #52, 58).

　　　　*Second*, *Pinaud* itself already accounts for — and distinguishes — the

exact precedent on which *Lawson* relies.  *Lawson* quotes the Circuit's

precedential decision in *Eagleston* v. *Guido* for the accrual-rule formulation

preferred by the City.  *See Lawson*, 446 F. App'x at 329 (quoting *Eagleston*, 41

F.3d at 872).  But Footnote 17 of the majority opinion in *Pinaud* addresses

*Eagleston*:

> The dissent intimates that our determination ... is
> inconsistent with ... *Eagleston*.  But the discussion in
> *Eagleston* in no way forecloses delayed accrual of
> causes of action under § 1983 when the circumstances
> of the case warrant it. ... *Eagleston*'s statute-of-
> limitations discussion only addresses issues relating to
> the accrual of claims against individual defendants,
> claims that do not require a "policy or custom," as do
> claims against a municipality.  The issue before us,
> instead, is precisely that of when [the plaintiff] knew or
> should have known enough to claim the existence of a

> "policy or custom" so that he could sue the
> [municipality].

*Pinaud*, 52 F.3d at 1157 n.17 (internal citations omitted).  The City offers no

other authority to suggest that the *Pinaud* formulation should be

rejected — particularly where, as here, "the circumstances of the case warrant

it." *Id.*

Third, *Lawson* is distinguishable.  Here, unlike in *Lawson*, accrual was

not delayed based upon "the future discovery of facts *tangentially related* to a

*Monell* claim."  *Lawson*, 446 F. App'x at 329 (emphasis added) (rejecting

plaintiff's delayed accrual argument for § 1983 race-discrimination claim

because it relied on events "insufficiently related" to the adverse employment

action).  As earlier discussed, there is nothing "tangential" or "insufficiently

related" about the USAO Report's conclusions, incorporated into the PSAC,

concerning the policy or practice of abuse of adolescent male inmates at Rikers

Island from 2011 through 2013, precisely Plaintiff's profile and allegations.  *See*

*generally Houston* v. *Cotter*, 7 F. Supp. 3d 283, 291-92 (E.D.N.Y. 2014) (relying

on *Pinaud* and distinguishing *Lawson*).

Here, Plaintiff notes that "[a]lthough [he] was aware of the isolated

circumstances of his assault when he filed his initial and amended complaints,

he had no insight at those times into the DOC customs and policies that led to

the use of excessive and unnecessary force on adolescents at Rikers."  (Pl.

Br. 12).  The Court finds that Plaintiff's *Monell* claim accrued, at the earliest, on

the date of the USAO Report's August 4, 2014 publication.  Notably, Plaintiff

(through his counsel) was not *actually* aware of the Report and its findings

until sometime in mid-2016.  (Burns Decl. ¶¶ 4-5).  *See Pinaud*, 52 F.3d at 1157 (evaluating whether the plaintiff "knew about, or at least had reason to come to know about, the policy or custom").  But even holding Plaintiff to the more stringent standard, i.e., accrual when Plaintiff *should have become* aware of the Report, the Court does not find that the *Monell* claim is time-barred.[4]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the FAC is GRANTED.  Plaintiff is directed to file the PSAC contained in Exhibit A of the declaration in support of his motion (*see* Dkt. #92-1).  The Clerk of Court is directed to terminate the motion at Docket Entry 90.

The parties are hereby ORDERED to appear for a status conference on March 23, 2017, at 11:00 a.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

SO ORDERED.

Dated:      March 6, 2017
            New York, New York
                                    _____
                                    KATHERINE POLK FAILLA
                                    United States District Judge

---

[4]      Accordingly, the Court need not reach the parties' dispute centered on the relation-back doctrine.